UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:24-CV-00046-DLB-EBA

KYLE THOMPSON, PLAINTIFF,

V.  **ORDER & RECOMMENDED DISPOSITION**

COOKIE CREWS, *et al.*, DEFENDANTS.

*** *** *** ***

This matter is before the court on several motions. First, Plaintiff Kyle Thompson has made two motions for a preliminary injunction. [R. 32; R. 37]. Second, Thompson has also moved for a motion to stay or halt all further proceedings and deadlines until further notice. [R. 36]. Defendants Deputy Warden David Bradley, Christopher Barker, Rhonda May, and Jeremy Cox (collectively, the "Defendants") filed a response opposing Thompson's motions. [R. 36]. The matter is now fully briefed, [R. 41], and ripe for review. The Court recognizes that Thompson is proceeding *pro se* and construes his pleadings more leniently. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### FACTS AND PROCEDURAL HISTORY

Thompson is an inmate currently confined at Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky. On March 21, 2024, he filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, which alleged violations of his constitutional rights by fourteen named defendants. [R. 1]. All named defendants were officers or employees of either the Kentucky Department of Corrections ("KDOC") or LSCC. [*Id.*]. District Judge David L. Bunning screened Thompson's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), leading to many of Thompson's claims being dismissed. [*See* R. 13].

However, Thompson's First Amendment retaliation claims against Defendants were allowed to proceed. [*Id.*]. In support of these claims, Thompson alleged that he was retaliated against for filing an administrative complaint against Defendant Barker. [R. 11 at pgs. 9–10]. Barker, who was apparently aware that Thompson is a paraplegic, allegedly had him transferred to Luther Luckett Correctional Complex ("LLCC") in LaGrange, Kentucky, specifically because it did not comply with the Americans with Disabilities Act. [*Id.* at pg. 10]. Thompson also claims that Defendants were aware he was paraplegic and nonetheless assisted Barker in having him transferred to LLCC.[1] [*Id.* at pg. 11].

Now, Thompson has filed several motions, including two motions for a preliminary injunction and a motion to stay or halt all further proceedings and deadlines until further notice. [R. 32; R. 36; R. 37]. In his first motion for a preliminary injunction, Thompson alleges that he is now being charged with "frivolous disciplinary actions" based on statements he made about a correctional officer in a JPay message to his loved ones because he lodged this complaint. [R. 32]. As a result of these disciplinary actions, he has been placed in disciplinary segregation—which he claims Barker oversees—with "virtually no access to the courts" and "in the direct path of physical, mental, and other harm" of Barker. [*Id.* at pgs. 1–2]. And in Thompson's second preliminary injunction, he alleges that, after being released from disciplinary segregation, he has since been sent back for another disciplinary violation for filing a grievance, which constitutes another form of retaliation. [R. 37 at pgs. 1–2]. He alleges that, in disciplinary segregation, he is "under cruel conditions of confinement and torture," and thus is unable to litigate this case until released. [*Id.* at pg. 2]. Both preliminary injunction motions request either a temporary restraining order against all LSCC staff, an injunction to "stop and prevent any further retaliation" by LSCC staff, or that

---

[1] It appears that Thompson has since been transferred back to LSCC. [*See* R. 15].

he be transferred to another facility. [R. 32 at pg. 2; R. 37 at pg. 2]. Finally, Thompson moves to stay or halt all proceedings and deadlines in this case "until further notice." [R. 36]. As cause, he claims that he is unable to litigate this case due to the conditions of his disciplinary segregation. [*Id.* at pg. 2].

Defendants oppose the motions. [R. 38]. They aver that Thompson's claims of retaliation for filing a lawsuit, or that he is being denied legal documents and access to the courts, are without merit. [*Id.* at pgs. 3–8]. Moreover, regarding the preliminary injunction motions, they contend that none of the injunctive relief factors weigh in favor of granting the motions. [*Id.* at pgs. 8–9].

In reply, Thompson makes several arguments. First, in support of the stay, he claims that he has limited personal funds and no job at LSCC, so he can't purchase more writing materials to draft briefing while in disciplinary segregation. [R. 41 at pg. 3]. Moreover, he claims that he does not have enough time to research or write briefing in response to court orders due to the constraints of the prison mail system. [*Id.* at pg. 2]. Second, in support of his request for injunctive relief, he provides additional facts to rebut Defendants' claim that his retaliation claims are without merit. Specifically, he claims that he was retaliated against for the content of his letters—content which falls within the bounds of permissible First Amendment activity. [*Id.* at pg. 4]. Further, he claims that Barker ordered that his lights be left on all day and night for five days, and that Barker had him placed specifically next to a psychotic inmate that "sing[s], yell[s], and/or beat[s] on the doors and walls all throughout the night." [*Id.* at pgs. 5–6]. All of this has caused him to suffer from severe anxiety and substantial sleep deprivation, and beyond this he believes that "substantial harm is just waiting to happen." [*Id.*].

## ANALYSIS

### I.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Where, as here, an inmate seeks to enjoin the conduct of state prison officials, "the court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting." *Frazer v. Mullins*, No. 5:23-CV-193-REW-CJS, 2024 WL 5113205, at *2 (E.D. Ky. Nov. 26, 2024) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984)).

The Sixth Circuit has explained that, when considering a motion for a preliminary injunction, four factors are instructive: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012) (citation omitted). Importantly, "[t]hese factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573 (citation omitted).

**II.**

The undersigned recommends that Thompson's motions for preliminary injunction be denied because he has not demonstrated a likelihood of success on the merits or irreparable harm, and granting the injunction would cause substantial harm to the public interest.

**A. Likelihood of Success on the Merits**

Thompson asserts violations of his First Amendment rights, claiming that he was retaliated against and that he was denied access to the courts. [R. 32; R. 37]. When courts weigh the success of an underlying claim on its merits, the plaintiff's failure to demonstrate more than the "mere possibility of success" is generally insufficient to justify emergency injunctive relief. *Davis v.*

*Holland*, No. 0:11-CV-00096-HRW, 2011 WL 5025024, at *5 (E.D. Ky. Oct. 20, 2011) (citing *Mason Cnty. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). Indeed, for this court to grant his motion, Thompson must demonstrate a "strong" or "substantial" likelihood of success on the merits. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). Conversely, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor.").

　　1. **Retaliation Claim**

Thompson claims that he was placed in disciplinary segregation for engaging in protected First Amendment speech by calling non-party Officer John King a liar and referring to him as a "piece of shit" in a Jpay email sent to his loved ones. [R. 41 at pgs. 3–4; R. 38-3 at pg. 5]. For this, Thompson contends, non-party Officer Brian Dickerson charged Thompson with violating KDOC policy prohibiting "disrespectful/threatening language/gestures/acts towards [a] non-inmate." [R. 38-3 at pg. 2]. After being found guilty at a February 18, 2025, hearing, he was assigned fifteen (15) days in disciplinary segregation. [*Id.* at pgs. 2–3; R. 38 at pg. 7]. Then, after being released from disciplinary segregation, Thompson was returned to disciplinary segregation after non-party Officer Alvin Gillum wrote him up despite having violated no rules. [R. 37 at pg. 2]. Allegedly, he was written up right after Gillum pulled him aside to discuss a grievance he had recently filed. [*Id.*]. Thus, having violated no rules, Thompson appears to argue that the only explanation for this write-up is that it was to retaliate against him for filing the instant lawsuit. [*Id.*].

A valid First Amendment retaliation claim requires proof that: (1) Thompson was engaged in protected conduct; (2) an adverse action was taken against Thompson that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the adverse action and Thompson's protected conduct. *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000)). Whether an action is deemed "adverse" is a question of fact and depends on context. *Id.* at 602-03.

Thompson has met his burden of demonstrating the first two elements. First, there is no question that the filing of an administrative grievance or lawsuit is protected activity under the First Amendment. *Rodgers v. Hawley*, 15 Fed.Appx. 403, 409–10 (6th Cir. 2001) (citing *Thaddeus-X*, 175 F.3d at 388) ("Prisoners have a First Amendment right to file grievances and access the courts without suffering retaliation for so doing."). Second, that Thompson was allegedly subject to disciplinary segregation—a move which was accompanied by a loss of certain privileges and housing near mentally disturbed inmates—constitutes an adverse action. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (citing *King v. Zamiara*, 150 Fed.Appx. 485, 493 (6th Cir. 2005)) (noting that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *see also Thaddeus-X*, 175 F.3d at 398 (an inmate's "transfer to the area of the prison used to house mentally disturbed inmates . . . would likely have a strong deterrent effect"). However, Thompson has failed to establish a causal connection between his protected activity and the adverse action.

To establish a causal connection, Thompson must bring forth some evidence of a retaliatory motive, as "conclusory allegations of retaliatory motive unsupported by material facts" are insufficient. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005)). While circumstantial evidence of a retaliatory motive may suffice,

mere "temporal proximity between the inmate's protected conduct and the official's adverse action" alone is insufficient to establish retaliatory motive. *Id.* at 476 (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010)).

Here, Thompson does not assert that any of the Defendants themselves engaged in retaliatory conduct. [R. 41 at pg. 3]. Rather, he asserts that non-party Officer Dickerson and non-party Officer Gillum retaliated against him, purportedly on behalf of Defendants. [*Id.*]. As Thompson sees it, Officer Dickerson filed the disciplinary action against him, for conduct protected by the First Amendment, to "get revenge" for his "long-time friend[s] and co-worker[s]" whom Thompson had sued. [*Id.*]. But other than these conclusory allegations, Thompson has failed to allege any specific facts demonstrating that Officer Dickerson had any actual knowledge of the instant lawsuit. *See Durr v. Vanderwiel*, Case No. 1:23-CV-1286, 2024 WL 1363966, at *9 (W.D. Mich. Apr. 1, 2024) (where non-party correctional officer issued misconduct charges against plaintiff for conduct unrelated to plaintiff's ongoing lawsuit against other correctional officers, plaintiff's failure to allege facts that non-party correctional officer had knowledge of the events surrounding plaintiff's lawsuit was fatal to his First Amendment retaliation claim). And as for the write-up from Officer Gillum, Thompson's conclusory allegations are insufficient to causally connect it to the filing of this lawsuit. *See Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)) (finding "conclusory allegations of retaliatory motive 'unsupported by material facts'" insufficient to establish a causal connection). Accordingly, because Thompson has failed to demonstrate a causal connection between his protected conduct and the adverse action, he has failed to demonstrate that his retaliation claim is likely meritorious.

    **2. First Amendment Denial of Access to Courts**

Thompson also claims that his constitutional right to access the court was infringed due to his being placed in disciplinary segregation and its associated limitations and restrictions. Specifically, he claims that while in disciplinary segregation, he: (1) cannot access the LSCC law library or his legal materials; (2) "only has access to an inmate legal aide one day a week"; (3) is only able to access twenty (20) pieces of writing paper per week; and, (4) because he cannot work while in disciplinary segregation, he does not have the means to continue purchasing writing paper each week to litigate his cases going forward. [R. 32 at pgs. 1–2; R. 41 at pgs. 2–3].

The First Amendment protects a prisoner's right to access to the courts, but this right is not carte blanche. *Lewis v. Casey*, 518 U.S. 343, 353–55 (1996). Indeed, "[p]rison regulations which reasonably limit the times, places, and manner in which inmates engage in legal research and preparation of leg[al] papers" are constitutionally permissible "so long as th[os]e regulations do not frustrate access to the courts." *Walker v. Mintzes*, 771 F.2d 920, 931–32 (6th Cir. 1985) (citation omitted). Perhaps most importantly, "a plaintiff *must* demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement." *Ray v. Michelle*, No. 15-5963, 2016 WL 11848558, at *4 (6th Cir. Sept. 9, 2016) (citing *Casey*, 518 U.S. at 351–55) (emphasis added). "Actual prejudice" includes, for example, "having a case dismissed, being unable to file a complaint, [or] missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim." *Anthony v. Bauman*, No. 2:05-CV-64, 2006 WL 2548617, at *6 (W.D. Mich. Sept. 1, 2006) (citing *Lewis*, 518 U.S. at 351–53).

Thompson has failed to demonstrate a likelihood of success on the merits. Even if Thompson's placement in disciplinary segregation (and its accompanying limitations on his ability to receive writing materials) impacted his ability to access the courts and litigate this case, he has not alleged any facts which demonstrate that he has suffered actual prejudice. On the contrary, Thompson has been an active litigant throughout this case, including during periods in which he alleges he was in disciplinary segregation and unable to adequately access the courts. [*See, e.g.*, R. 24; R. 29; R. 29; R. 32; R. 33; R. 35; R. 36; R. 37]. Moreover, Thompson has otherwise been able to respond according to Court imposed deadlines. [*See* R. 33; R. 41]. Having failed to demonstrate any actual prejudice to pertinent, pending litigation, Thompson has failed to demonstrate that his right to access the court claim is likely meritorious.

## B. Remaining Injunctive Relief Factors

Recall that "a finding that there is simply no likelihood of success on the merits is usually fatal" for any request for injunctive relief. *Gonzales*, 225 F.3d at 625; *Reno*, 154 F.3d at 288. As detailed above, Thompson's claims have little likelihood of success on the merits. Nevertheless, because the preliminary injunction factors "are to be balanced against each other," *Overstreet*, 305 F.3d at 573, a review of the remaining factors is prudent.

Thompson has failed to demonstrate that he will suffer irreparable harm absent the Court granting his motion. "The 'key word' in determining the extent of an injury sufficient to support the award of injunctive relief is 'irreparable.'" *Roden v. Floyd*, No. 2:16-CV-11208, 2018 WL 6816162, at *4 (E.D. Mich. Nov. 13, 2018) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). "Mere injuries, however substantial, are not enough." *Id.* Rather, to demonstrate harm that is "irreparable," the harm "must be actual and

imminent, and not merely remote or speculative." *Agney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Here, the injuries Thompson alleges are largely speculative. Indeed, for purposes of litigating this case, he requests injunctive relief because he speculates that he will be unable to adequately litigate his case if he is continually placed in disciplinary segregation going forward. [R. 37 at pg. 1]. But he has not asserted that his placement in disciplinary segregation has caused him to fail to receive anything from the Court, or that he has unwillingly missed any court-imposed deadlines. Moreover, he contends that while in disciplinary segregation, he is "in the direct path of physical, mental, and other harm" because Defendant Barker is its Unit Administrator. [R. 32 at pg. 2]. Given his circumstances, he claims that "substantial harm is just waiting to happen." [R. 41 at pg. 6]. These harms are thus theoretical and insufficient to establish that he faces irreparable harm should the Court deny his preliminary injunction motions.

Thompson also contends that, while in disciplinary segregation, he faces "cruel conditions of confinement and torture." [R. 37 at pg. 2]. To this end, he claims that Barker ordered that his lights be left on all day and night for five days, and that Barker specifically placed him next to a psychotic inmate who "sing[s], yell[s], and/or beat[s] on the doors and walls all throughout the night." [R. 41 at pgs. 5–6]. All of this has allegedly caused him to suffer from severe anxiety and substantial sleep deprivation, and beyond this he believes that "substantial harm is just waiting to happen." [*Id.*]. These circumstances are surely difficult, but prison conditions are often "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Bearing these sorts of conditions is "part of the penalty that criminal offenders pay for their offenses against society." *Id.* Ultimately, these factually unsupported circumstances do not constitute the kind of harm necessary to warrant injunctive relief.

The third and fourth factors also weigh in favor of denying Thompson's motions. Indeed, the Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is generally viewed as against the public interest. *See Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context."); *see also Frazer*, 2024 WL 5113205, at *4 (collecting cases) (concluding that, where a prisoner seeks injunctive relief against prison officials, the third and fourth elements weigh against a court granting injunctive relief). Accordingly, the remaining three factors all weigh against granting Thompson's motions.

### III.

Accompanying his preliminary injunction motions, Thompson has also moved to stay or halt all proceedings and deadlines in this case until further notice. [R. 36]. As cause, he cites many of the same concerns with his placement in disciplinary segregation which underlined his right to access the courts claim. [*Id.*; *see also* R. 32; R. 37; R. 41]. Defendants oppose a stay. [R. 38].

District courts may stay a case where procedurally appropriate. *F.T.C. v E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Importantly, "court[s] must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir.

1977). In ruling on a motion to stay, district courts have broad discretion. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis*, 299 U.S. at 254).

At this early juncture, the Court concludes that a stay of proceedings is inappropriate. Principally, while the Court has instructed the parties to "file separate reports to indicate the amount of time they will need to conduct discovery in this matter," [R. 28], and both parties have responded, [R. 33; R. 34], the Court has not yet entered a Scheduling Order. Moreover, as discussed above, the conditions he faces while in disciplinary segregation do not impose an unconstitutional limitation on Thompson's ability to access the courts and litigate this case. Although the Court is sympathetic to Thompson's claim that his temporary placement in disciplinary segregation makes litigating this case more difficult, these conditions do not serve as a reasonable basis for granting his motion to stay or halt all proceedings. *See Rhodes*, 452 U.S. at 347 (discussing the harsh realities of prison). Accordingly, Thompson's motion for a stay will be denied.

## CONCLUSION

Therefore, the Court, having considered the issues and being sufficiently advised,

**IT IS RECOMMENDED** that Thompson's motions for a preliminary injunction, [R. 32; R. 37], be **DENIED**.

**IT IS ORDERED** that Thompson's motion to stay, [R. 36], is **DENIED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir.

1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

    Signed May 6, 2025.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge